# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| SHEILA ST. CLAIR, | ) |
|     Plaintiff, | ) |
| v. | ) No. 2:12-04250-DGK-SSA |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
|     Defendant. | ) |

## ORDER REMANDING CASE TO COMMISSIONER FOR FURTHER PROCEEDINGS

Plaintiff Sheila St. Clair ("St. Clair") seeks judicial review of the Commissioner of Social Security's denial of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. The Administrative Law Judge ("ALJ") found that St. Clair suffers from severe impairments of "carpal tunnel syndrome with history right carpal release"[2] and arthralgias,[3] but she retains the residual functional capacity ("RFC") to perform light work with exertional restrictions limiting her to lifting or carrying no more than twenty pounds occasionally and ten pounds frequently, walking or standing for no more than six hours, and sitting-up for no more than six hours and nonexertional restrictions restricting her exposure to stress and interactions with others.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

[2] The Court assumes that by "carpal tunnel syndrome with history right carpal release" the ALJ means Plaintiff has carpal tunnel syndrome and has undergone carpal tunnel release surgery on her right hand. In carpal tunnel release surgery, a surgeon cuts the carpal transverse ligament in the patient's wrist to make more space for the nerve and tendons, thereby relieving pressure on the nerve. MedlinePlus, U.S. National Library of Medicine, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/ency/article/002976.htm, (last visited Aug. 12, 2013).

[3] Arthralgia is severe joint pain. PDR Medical Dictionary 149 (1st ed. 1995).

Despite finding that Plaintiff had carpal tunnel syndrome and arthralgias, the ALJ did not discuss whether or how these impairments affected her ability to work. Consequently, this case is remanded for additional consideration.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed the pending applications on March 16, 2010, alleging a disability onset date of December 1, 2009. The Commissioner denied her applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. On September 28, 2010, the ALJ issued his decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on July 10, 2012, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

2

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[4] Plaintiff contends the ALJ erred by: (1) failing to link the medical evidence to her RFC determination; (2) failing to properly evaluate Plaintiff's credibility; and (3) failing to find that her shoulder impairment and depressive disorder were severe impairments. Finding the ALJ erred by failing to sufficiently explain his RFC determination and link it to the medical evidence of record, the Court orders remand. Because the ALJ's credibility determination is intertwined with his RFC determination and the Commissioner concedes that the ALJ erred in failing to find Plaintiff's shoulder impairment and depressive disorder were severe impairments,[5] the Court does not address Plaintiff's remaining arguments.

When formulating an RFC, the ALJ must (1) include a narrative discussion of how the evidence supports each conclusion and cite specific medical facts and non-medical evidence; (2)

---

[4] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

[5] The Commissioner argues the failure to identify Plaintiff's depression and shoulder impingement as separate severe impairments had no practical effect on his RFC finding or ultimate determination. The Commissioner also concedes that the ALJ did not include Plaintiff's mental impairment in the list of severe impairments, but argues this failure is simply a deficiency in opinion-writing that did not impact the outcome. The Court need not address these arguments because the ALJ can correct these errors on remand.

assess the individual's ability to perform sustained work activities in a work setting on a regular and continuing basis; and (3) describe the maximum amount of each activity the person can perform. SSR 96-8p. When assessing a claimant's RFC, the ALJ must base the assessment on all of the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). In addition to considering all of the evidence, the ALJ must build "an accurate and logical bridge" between the evidence and his or her decision. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (Posner, J.).

The ALJ's decision summarized at least most of Plaintiff's medical records, but it is unclear whether the decision summarized all of Plaintiff's medical records. R. at 12-13. The records include two examinations by orthopedic surgeon Dr. James Stuckmeyer, M.D. R. at 219-231. Although the ALJ cited Dr. Stuckmeyer's November 2009 examination, it appears he was actually summarizing Dr. Stuckmeyer's previous report, from a March 2009 examination, in which Dr. Stuckmeyer recommended Plaintiff receive a steroid injection in her right shoulder. R. at 12, 222. This discrepancy is important because in his subsequent report Dr. Stuckmeyer observed that even after undergoing carpal tunnel surgery Plaintiff continued to experience "ongoing symptoms of numbness and tingling . . . decreased grip strength, and overall bilateral hand dysfunction." R. at 228. Dr. Stuckmeyer diagnosed Plaintiff with "a 15% permanent partial disability to the right wrist for the diagnosis of right carpal tunnel syndrome and status post right 3rd and 4th trigger finger releases." R. at 228. He also found Plaintiff had a "10% permanent partial disability to the left wrist." R. at 228. This is consistent with Plaintiff's report that she had problems using her hands, for example, in writing, using a computer, or peeling potatoes. R. at 30.

Whether the ALJ considered both of Dr. Stuckmeyer's reports or not, he did not link the these reports to the RFC determination. Nowhere in the ALJ's decision is there a narrative discussion of how Plaintiff's severe carpal tunnel impairment affects her RFC. The decision simply states "the above residual functional capacity assessment is supported by the claimant's activities of daily living, and the medical evidence of record considered as a whole." R. at 16. In this case, such an explanation does not provide a sufficient logical bridge between the medical evidence and the RFC determination. It fails to either provide limits accounting for Plaintiff's carpal tunnel syndrome or explain why Plaintiff's carpal tunnel does not limit her ability to work. In particular, the decision does not discuss whether Plaintiff experiences carpel tunnel in her right hand only or whether she experiences it in both hands,[6] nor does the decision discuss the degree to which Plaintiff can reach, handle, finger, or feel objects.

Since several of the jobs the ALJ found Plaintiff could perform appear to involve some use of the hands, e.g., small parts assembler (R. at 16), and there is some evidence in the record suggesting she has limited use of her hands, the ALJ's findings concerning the degree to which she can use her hands is outcome determinative. Consequently, the Court cannot dismiss the ALJ's failure to discuss the degree to which Plaintiff can use her hands as a mere deficiency in opinion writing technique. Accordingly, this case is remanded for additional consideration.

**Conclusion**

For the reasons discussed above, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date:   August 14, 2013                  /s/ Greg Kays
                                         GREG KAYS, JUDGE
                                         UNITED STATES DISTRICT COURT

---

[6] There is medical evidence on the record indicating it is bilateral in nature. R. at 219-222, 236.

5